IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| SUN LIFE ASSURANCE COMPANY OF CANADA, <br><br>                Plaintiff, <br><br>     v. <br><br> ADVANCE TRUST & LIFE ESCROW SERVICES, LTA, as Securities Intermediary, <br><br>                Defendant. | Civil Action No. 6:19-cv-670 |

## COMPLAINT

Plaintiff, Sun Life Assurance Company of Canada ("Sun Life"), files and asserts its Complaint against Defendant, Advance Trust & Life Escrow Services, LTA ("ATLES"), as Securities Intermediary, and in support thereof, alleges as follows:

### PARTIES

1.      Sun Life is a life insurance company organized and existing under the laws of Canada, with its principal place of business in the United States at One Sun Life Executive Park, Wellesley Hills, Massachusetts.  Sun Life is a citizen of the Commonwealth of Massachusetts.

2.      ATLES is a corporation established under the laws of Texas and is located at 1404 South New Road, Suite 200, Waco, Texas 76711.  ATLES is a citizen of the State of Texas.  ATLES is named as a party to this action solely because, in its capacity as Securities Intermediary, it holds bare legal title as administrator of the Policy (as defined herein).

### JURISDICTION AND VENUE

3.      This Court has subject-matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity between the Plaintiff, a citizen of Massachusetts, and the Defendant, a citizen of Texas, and because the amount in controversy exceeds $75,000.

4.      This Court has personal jurisdiction over ATLES because it is organized under Texas law and has its principal place of business in Waco, Texas.

5.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b–c) because ATLES resides in the Western District of Texas.

### FACTS COMMON TO ALL CLAIMS

**A.      The Application for and Issuance of a $10 Million Life Insurance Policy**

6.      In January 2006, Sun Life began receiving information about the possible issuance of a $10 million life insurance policy insuring the life of Clare A. Sawchuk.

7.      In January 2006, Sun Life was provided with Ms. Sawchuk's medical records.  In February 2006, Sun Life advised the broker general agent who was enquiring about the policy that a policy on Ms. Sawchuk's life would be tentatively approved from a medical standpoint, subject to all other underwriting requirements.

8.      Sun Life was provided with various information about Ms. Sawchuk's financial condition for the purpose of allowing Sun Life to determine whether Ms. Sawchuk would qualify for the amount of insurance sought—$10 million.

9.      On or about March 1, 2006, Sun Life received an "Inspection Report."  The company that provided the inspection report claimed to have interviewed Ms. Sawchuk and reported that she had a total household income of over $100,000 and a net worth of approximately $25 million.  Sun Life was informed that this $25 million in net worth consisted almost entirely of illiquid business assets.

10.      On or about March 3, 2006, Sun Life received a formal "Application for Life Insurance" seeking a $10 million Sun Life universal life insurance policy insuring the life of Ms. Sawchuk (the "Application").  A copy of the Application is attached as Exhibit A.  (Appropriate redactions of personal identifying information have been made.)

2

11.     The Application identified the "Clare A. Sawchuk 2006 Family Trust," a Delaware statutory trust (the "Trust"), as the would-be "owner" of the policy. *Id.* at 1. The Trust was also identified in the Application as the sole "beneficiary" and "payor" of the policy. *Id.* at 3.

12.     The Application identified the Trust as a Delaware trust, formed under Delaware law on March 3, 2006, and acting at the direction of a Delaware trustee, Wilmington Trust Company, located at 1100 N. Market Street, Wilmington, Delaware. *Id.*

13.     The Application also contained a representation that the proposed insurance would be used for estate planning purposes. *Id.* at 4.

14.     The Application also contained a representation that Ms. Sawchuk's total household income was over $100,000 per year, and that her total household net worth was $25 million—both of which appeared to confirm the information provided to Sun Life in the inspection report. *Id.*

15.     It was further represented to Sun Life that Ms. Sawchuk, as the proposed insured, signed the Application on March 3, 2006 in Wilmington, Delaware. *Id.* at 6.

16.     The Application was also signed on March 3, 2006 in Wilmington, Delaware by Michele C. Harra, Financial Services Officer for Wilmington Trust Company, as trustee of the Trust that was to be the owner and beneficiary of the purported policy. *Id.*

17.     The Application also contained declarations that the statements and answers in the Application were complete and true to the best of the signatories' knowledge and belief and that the answers therein were correctly recorded. *Id.* at 6.

18.     Thus, in completing the Application, the signatories knew that they were required to provide truthful, accurate, and honest responses to the questions presented. Furthermore, they

knew that Sun Life would rely upon the statements recorded on the Application in determining whether to issue a policy with the face amount requested, or whether to issue a policy at all.

19.     In a Request for Alteration of Application dated May 6, 2006, the Trust, acting through its trustee, indicated that the "Planned Periodic Premium Amount" was $368,403.90, which, according to the Application, would be paid by the Trust to Sun Life annually.   This Request for Alteration of Application also represented that it was signed in Wilmington, Delaware.   A copy of the Request for Alteration of Application is attached as Exhibit B.   *See also* Exhibit A at 3.

20.     In reliance upon the representations contained in the application documents and other documents and information submitted to Sun Life in connection with the Application, Sun Life issued a policy with a $10 million death benefit (policy number 020126240) (the "Policy") with an effective date of April 17, 2006.

21.     The original Policy was delivered to Wilmington Trust Company in Wilmington, Delaware, as trustee of the Trust.

22.     An initial premium payment of $580,700 was made for the Policy via wire on or about April 18, 2006 and no other premium payments were made while the Policy was owned by the Trust.   Upon information and belief, the premium payment originated from persons or entities who lacked an insurable interest in Ms. Sawchuk's life and were participating in a wager on her life.

23.     In fact, upon information and belief, and unbeknownst to Sun Life at any time prior to the issuance of the Policy, Coventry Capital, LLC, a Delaware limited liability company, and/or its affiliates (collectively, "Coventry") had arranged for the Policy premiums to be

forwarded to Sun Life via a purported Coventry non-recourse premium finance loan that would pay the premiums on the Policy during the two-year contestable period.

24.    Upon information and belief, as part of this purported "loan," the "lender" would fund or reimburse the amount of the initial premium payment.

25.    Upon information or belief, as a result of this purported "loan," neither Ms. Sawchuk nor anyone with an insurable interest in her life ever provided the funding for the premiums paid on the Policy.

26.    Upon information and belief, the purpose of this "loan," and indeed the very purpose of the Policy, was not to provide estate protection or to serve any valid and good faith insurance purpose, but rather to allow strangers with no insurable interest in Ms. Sawchuk's life to wager on her early demise.

27.    On or about July 3, 2008, slightly more than two years after Policy issuance, Sun Life received a request for information from Coventry, but this request was denied as Coventry lacked appropriate authorization to receive information about the Policy.

28.    On or about August 27, 2008, Sun Life received a request to change the ownership and beneficiary of the purported Policy from the Trust to Life Partners, Inc.  A copy of these ownership and beneficiary change forms is attached as Exhibit C.

29.    On or about April 28, 2017, Sun Life again received a request to transfer the ownership and beneficiary of the Policy from Life Partners, Inc. to ATLES, as securities intermediary.  A copy of these ownership and beneficiary change forms is attached as Exhibit D.

30.    Upon information and belief, Ms. Sawchuk passed away August 31, 2019.

31.    On or about September 25, 2019, ATLES, as securities intermediary, submitted a death claim to Sun Life for the death benefit of the Policy.

**B.    The Policy was Procured as Part of an Illegal Wagering Scam to Gamble on the Life of Ms. Sawchuk**

32.    Sun Life has conducted a review of the purported Policy and has determined, on information and belief, that it was at all times material hereto meant as an illegal wager on the life of Ms. Sawchuk.  Sun Life has further determined, on information and belief, that the Policy lacked an insurable interest prior to and at its inception and that any appearance of insurable interest was superficial only and was in reality a complete and total sham designed to conceal the true wagering nature of the purported Policy.

33.    Sun Life has further determined, upon information and belief, that the Trust itself was an illegal sham created to give the false appearance of a valid insurance trust established for valid estate planning purposes, and thus to give the superficial—but entirely false—appearance of a legitimate insurable interest.

34.    Moreover, upon information and belief, the source of the funds for the initial premium payment on the Policy was not Ms. Sawchuk or any person or valid entity possessing an insurable interest in her life.  Instead, the source of the premium was Coventry and/or other persons or entities who lacked an insurable interest in Ms. Sawchuk's life and were participating in a wager on her life.

35.    None of this was disclosed to Sun Life.  Instead, upon information and belief, to disguise the true wagering nature of the Policy, stranger entities knowingly and intentionally misrepresented material information and affirmatively concealed material information from Sun Life so as to intentionally mislead and induce Sun Life into issuing a policy that it otherwise would have rejected.  Upon information and belief, and among other things, this included:

a.    Falsely representing that Ms. Sawchuk had a legitimate need for $10 million in insurance for estate planning purposes, based upon an alleged need to protect her purported $25

million net worth from estate taxation.  In reality, Ms. Sawchuk and her husband had no such need for insurance protection.  Rather than providing for Ms. Sawchuk's estate protection needs, the Policy was procured solely for the purpose of allowing stranger-investors to make an illegal wager on the life of Ms. Sawchuk in violation of applicable Delaware law.

b.  Falsely representing that Ms. Sawchuk had established the Trust in Delaware for a legitimate purpose.  Instead, the Trust was established solely for the purpose of making an illegal wager on the life of Ms. Sawchuk in violation of applicable Delaware law.  The Trust furthered this unlawful scheme by (1) giving the appearance of a valid Delaware statutory trust, and (2) acting as the owner, beneficiary, and payor of premium of the purported Policy so as to conceal that the real owner in interest, the real beneficiary in interest, and the real payor of premium was a stranger to Ms. Sawchuk.  In reality, the Trust was a sham, and stranger entities acting together to generate the Policy concealed the truth from Sun Life.

c.  Falsely representing that the premiums would be paid by the Trust.  In reality, the premiums were intended to be paid, and were in fact paid, by Coventry and its associates pursuant to the terms of the non-recourse premium financing agreement.  At no point did the Trust or Ms. Sawchuk provide any of the funding for the premium payments, nor did they ever intend (or even have the means) to pay the premium from personal funds.

d.  Falsely declaring in the Application that "the statements and answers in this Application are complete and true to the best of my/our knowledge and I/We believe that they are correctly recorded."  Instead, stranger entities knew and intended for their statements,

answers, and representations to be false and misleading, and otherwise concealed the truth from Sun Life.

36.     In addition to the above-mentioned statements, representations, and omissions made to mislead and induce Sun Life to issue the Policy, stranger entities took steps after issuance of the purported Policy in March 2006 so as to further and continually conceal the true wagering nature of the transaction.  Upon information and belief, and among other things, this included:

a.  Causing Sun Life to believe that premium payments were being made by a valid life insurance trust.  In reality, the Trust was not valid, and it had no funds of its own with which to pay any premiums, all of which was concealed from Sun Life.

b.  Continuing to promote the Trust as being valid.  In reality, the Trust was used as a front to disguise the fact that the premiums were being paid by strangers to Ms. Sawchuk who were wagering on her life, which was concealed from Sun Life.

37.     Upon information and belief, as part of the illegal wagering scheme, stranger entities misrepresented and otherwise concealed from Sun Life that from the outset, the purported Policy was intended to be transferred to a different owner with no insurable interest in the insured.

38.     The identity of the true owner and beneficiary of the purported Policy was, therefore, continually concealed from Sun Life.

## **FIRST CAUSE OF ACTION**
## **DECLARATORY JUDGMENT – ILLEGAL HUMAN LIFE WAGERING CONTRACT**
### **(AGAINST DEFENDANT ATLES, AS SECURITIES INTERMEDIARY)**

39.     Sun Life hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth herein at length.

40.     The Policy was applied for in Delaware by a Delaware statutory trust, as owner and beneficiary of the Policy.   The Policy was then delivered to the trustee of the Trust, Wilmington Trust Company, a Delaware corporation, at its offices in Wilmington, Delaware. The Policy was amended by an Amendment to the Application signed by Wilmington Trust Company in Wilmington, Delaware.  The Policy is governed by Delaware law.

41.     The Delaware Constitution provides that "[a]ll forms of gambling are prohibited in this State except [those explicitly set forth in the statute]."   Del. Const. Art. II, § 17. Moreover, the Delaware Supreme Court has addressed the issues associated with life insurance policies used to wager on the death of insureds and has held that, under Delaware law, such policies are mere wagering contracts and are void *ab initio*—as if they never existed.   The Delaware Supreme Court has also been clear that challenges to void *ab initio* wager policies such as this are not barred by any legal principle, including any two-year contestable period or clause. *PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Trust*, 28 A.3d 1059 (Del. 2011); *see also, e.g., Sun Life Assur. Co. of Canada v. U.S. Bank Nat'l Ass'n*, No. 14-CIV-62610-BLOOM, 2016 U.S. Dist. LEXIS 4732 (S.D. Fla. Jan. 13, 2016), *aff'd on all issues but prejudgment interest by Sun Life Assur. Co. of Canada v. U.S. Bank Nat'l Ass'n*, 2017 U.S. App. LEXIS 10389 (11th Cir. 2017) (declaring a Coventry policy void *ab initio*) .

42.     As set forth herein, the Policy was, from the outset, intended as a wager on the life of Ms. Sawchuk.  Whether Ms. Sawchuk knew the details of this scheme or her identity was merely used as an instrumentality to procure the Policy, stranger investors were wagering on Ms. Sawchuk's life and hoping to trigger a secondary market cash-in on the Policy's $10 million death benefit.

43.     Accordingly, Sun Life seeks, and is entitled to, a declaratory judgment that the Policy was an illegal wagering contract that violated the Delaware Constitution and the public policy of Delaware, thus rendering the Policy void *ab initio*, meaning that the Policy never came into existence.

## SECOND CAUSE OF ACTION
## DECLARATORY JUDGMENT – LACK OF INSURABLE INTEREST
### (AGAINST DEFENDANT ATLES, AS SECURITIES INTERMEDIARY)

44.     Sun Life hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth herein at length.

45.     Under Delaware law, a valid and legitimate insurance trust can have a valid insurable interest in the life of the insured.  *See* 18 Del. C. § 2704(c)(5).

46.     However, because the Trust was an illegitimate cover for the wager on Ms. Sawchuk's life (and because the Trust itself was void *ab initio* as explained below), the Trust lacked any insurable interest in the life of Ms. Sawchuk.  Accordingly, no insurable interest existed at the time of issuance of the Policy, and the Policy is void *ab initio* for lack of insurable interest.

47.     Additionally, the Policy was applied for and issued at the behest of individuals or entities—with no insurable interest in the life of the insured—who procured the Policy for the purpose of benefitting stranger investors in the life insurance secondary market.  Accordingly, the Policy is void *ab initio*.

48.     Therefore, Sun Life seeks, and is entitled to, a declaratory judgment that the Policy lacked insurable interest because it was procured by and for the benefit of strangers without any insurable interest under Delaware law.

**THIRD CAUSE OF ACTION**
**DECLARATORY JUDGMENT – INVALIDITY OF THE TRUST**
**(AGAINST DEFENDANT ATLES, AS SECURITIES INTERMEDIARY)**

49.     Sun Life hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth herein at length.

50.     As set forth herein, the Trust was a sham designed to conceal the true wagering nature of the Policy.  The Trust had no legitimate purpose.  Rather, the purpose in creating the Trust was to defraud other parties including Sun Life; the Trust took actions in violation of Delaware law; and enforcement of the Trust is against public policy.  The Trust is therefore void *ab initio* under Delaware law.

51.     Accordingly, Sun Life seeks, and is entitled to, a declaratory judgment that, under Delaware law, the Trust never came into existence and thus lacked capacity to apply for and enter into the Policy, thus rendering the Policy void *ab initio*.

WHEREFORE, Sun Life respectfully requests the entry of an Order by this Court as follows:

A.     Declaring that the Policy is void *ab initio* due to it having been procured as a wagering contract on the life of Ms. Sawchuk;

B.     Declaring that the Policy is void *ab initio* due to it having been procured without a valid insurable interest at inception;

C.     Declaring that the Trust is void *ab initio* due to it having been a sham to conceal the wagering contract on the life of Ms. Sawchuk;

D.     Declaring that because the Trust is void *ab initio* it never existed;

E.     Declaring that because the Trust never existed, the Trust lacked capacity to contract with Sun Life, and thus the Policy is *void ab initio*;

F.    Declaring that because the Policy is void *ab initio* it never existed;

G.    Declaring that because the Policy is void *ab initio* the Court will leave the parties to this illegal contract as it finds them, thus permitting Sun Life to retain the premiums paid on the Policy, or, in the alternative, declaring that Sun Life may retain some or all of the premiums paid on the Policy to effectuate an offset with respect to Sun Life's costs and losses associated with the Policy; and

H.    Awarding Sun Life any further relief this Court deems appropriate.


Dated:  November 19, 2019                    Respectfully submitted,

                                             /s/ *Kendall Kelly Hayden*
                                             Kendall K. Hayden (I.D. No. 24046197)
                                             COZEN O'CONNOR, P.C.
                                             1717 Main Street, Suite 3100
                                             Dallas, TX 75201
                                             (214) 462-3072
                                             khayden@cozen.com

                                             Michael J. Miller (*pro hac vice to be filed*)
                                             Gregory J. Star (*pro hac vice to be filed*)
                                             Joseph M. Kelleher (*pro hac vice to be filed*)
                                             COZEN O'CONNOR, P.C.
                                             One Liberty Place, Suite 2800
                                             Philadelphia, PA 19103
                                             (215) 665-4146
                                             *Attorneys for Plaintiff,*
                                             *Sun Life Assurance Company of Canada*